JAMES S. JACOBY *v.* JAMES G. NEAL, ET AL.

**Highways—Viewer's Reports—Description of Route.**
   The viewer's report upon which a new highway is ordered opened must contain a description of the road by courses and distances and to comply with this rule the points of its commencement and termination should be fixed by some visible objects sufficient to determine their exact locality.

**Starting Point.**

    A description, in the viewer's report upon the location of a public highway and in the order of the court approving such report and establishing such highway, is fatally defective which names as the starting point a place designated upon the surveyor's map as point 6, but fails to describe such point by anything on the land or with reference to any object recorded or existing.

APPEAL FROM BOURBON CIRCUIT COURT.

March 24, 1876.

OPINION BY JUDGE PETERS:

Application was made by James G. Neal and others to the Bourbon county court to open a road in said county "from some point on Greenwich" road between Harp's line, or John F. Jacoby's line, to the Maysville and Lexington turnpike road, and thereupon H. M. Roseberry, Silas Evans and Larkin B. Dawson were, by said court, appointed viewers, or any two of them, to view the ground over which the road was proposed to be opened, and report the route of said road by metes and bounds, courses, and distances, also the conveniences and inconveniences which will result as well to individuals as to the public.

The viewers were permitted to examine other routes than that proposed, and report in favor of the one they preferred with the reasons of their preference, describing the route so laid out by metes and bounds, and by general courses and probable distances, and report the names of the owners and tenants of the land over which the road proposed by them is to be run, and the surveyor of Bourbon county was directed to attend the viewers and make out and return a map or diagram of the routes viewed, and to report such other matters as should be required of him by any of the parties, the viewers to be sworn faithfully and impartially to execute the duties assigned them.

The viewers made their report to the February term of the court, 1874, which was excepted to by Steel and others, the exceptions were sustained, and then Joseph H. Ewalt, John F. Galbott, and Laban T. Becraft were appointed viewers in place of those first named, with the same powers, and with like directions. They made a report to the April term, 1874, and their report was quashed because the viewers were not sworn before they entered upon the discharge of their duties, and the same viewers were again appointed, with the same direction and powers as contained in the first order appointing

them. They reported to the June term, 1874. At the next July term of the court, James S. Jacoby filed exceptions to the report. His exceptions were overruled, and the court, then, after hearing the evidence offered by the parties, adjudged that said road be established and opened as directed by the viewers and the accompanying plat, beginning at 6 thereon on Maysville Pike, and terminating on the Greenwich Road, upon condition that the applicants in this motion pay to James Boone one hundred dollars per acre for the land taken, and build the additional fencing along his line, and that they also pay James S. Jacoby the damages hereinafter awarded to him by a jury summoned by a writ of *ad quod damnum*. Said road was on a line between Jacoby and Boone to run entirely on the lands of Boone, and not to disturb the existing division fence between Boone and Jacoby.

A writ of *ad quod damnum* was ordered, commanding the sheriff of the county to summon and empanel a jury of freeholders of the county, not related to any of the applicants for the road, or to James S. Jacoby, and not residing within one mile of the proposed road, said jury to meet Thursday, the 13th of August, 1874, on the land of James S. Jacoby at the Maysville & Lexington Turnpike, where it is proposed to run the road. The jury empanelled under the writ of *ad quod damnum* assessed Jacoby's damages at $620, which were paid into court, but Jacoby declined to receive the same, and the money was placed in the custody of the court, and the road ordered to be opened, etc., to all of which Jacoby excepted, and tendered his bill of evidence, which was allowed and signed by the judge; and he then appealed to the Bourbon circuit court, and that court having affirmed the judgment of the county court, Jacoby has appealed to this court.

The first question presented is, was the last report made by the viewers sufficient to authorize the establishment of the road according to that report? The law requires the viewers to describe the route for the road laid out by them by metes and bounds, and by general corners and probable distances. The report in this case describes the location of the road as beginning at figure "6" in survey of December 6, 1873, filed heretofore, being in the middle of the Maysville and Lexington Pike, opposite Jacob Jacoby's farm as shown in the survey and plat above referred to, and which is made a part of this report, then running N. 45¼′ W. 53.20 poles through James Jacoby's to James Boone's corner, containing 2 R. 217 poles of land, giving them the courses and distances through to

the terminus described as "leaving the road through James Mc-Intyre, N. 52' W. 64 poles, to "9" in the middle of the Greenwich Road, to the mouth of the Saguser Lane."

The beginning point is taken by the viewers in their report from the report of the surveyor, which he fixed on his map at figure "6" in the turnpike road. · This point might be certain and definite on the surveyor's plat, but that would not afford the means of finding the exact place in the turnpike road to commence. From that description the location could not be found, nor would the further description that the place is opposite Jacob Jacoby's farm make it more easily found; how far Jacob Jacoby's farm may extend parallel with the turnpike road, or how far figure 6 is from the southern or northern corner of said farm, is not disclosed; and if the attempt should be made to discover the location of figure 6 on the turnpike road by reversing the line, it would be even more difficult to find figure 9 in the middle of the Greenwich Road.

A road cannot be said to be meted and bounded, when neither the beginning nor the end of the route can be ascertained by any certain tangible objects. As said by this court in *Phillips v. Tucker, et al.,* 3 Met. 69, the law requires that the route shall be meted and bounded by the viewers, and to comply with this requisition the points of its commencement and termination at least should be fixed by some visible objects sufficient to determine their exact locality.

The irregularity of empanelling the jury need not be discussed, as it may not occur again. The establishment of the road before the writ of *ad quod damnum* issued and the damages were assessed, was premature. The appeal to the circuit court in this case was in the same attitude that appeals from the circuit court to this court occupy, and the circuit judge so heard the case.

But for the error pointed out the judgment is *reversed* and the cause is remanded with directions to render a judgment reversing the judgment of the county court, and for further proceedings consistent herewith. It does not appear in this record that the opening of the proposed road is authorized by chap. 94, General Statutes, nor any law.

*A. M. Swope, J. A. Prall, Marshall & McLeod, J. F. Robinson,* for appellant.

*W. C. P. Breckenridge,* for appellees.